UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


BRIDGET BRADLEY, ON BEHALF OF
THE WRONGFUL DEATH BENEFICIARIES
OF ROY BRADLEY, JR.

                                                    PLAINTIFF


VS.                                 CIVIL ACTION NO. 3:08CV261TSL-JCS


THE CITY OF JACKSON, MISSISSIPPI;
MAYOR FRANK MELTON; JACKSON POLICE
OFFICER L.V. GATOR; CHIEF OF POLICE
SHIRLENE ANDERSON AND HER SUCCESSORS;
HINDS COUNTY SHERIFF MALCOLM MCMILLIN;
HINDS COUNTY SHERIFF "JOHN DOE"; AND
G&K SERVICES, CO.                                   DEFENDANTS


MEMORANDUM OPINION AND ORDER

     This cause is before the court on the motion of defendant

Hinds County Sheriff Malcolm McMillin for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Palintiff Bridget Bradley, on behalf of the wrongful death

beneficiaries of Roy Bradley, Jr., has responded to the motion and

the court, having considered the memoranda of authorities,

together with attachments, submitted by the parties, concludes

that the motion is well taken and should be granted.

     In her complaint, plaintiff alleges the following:  On

September 23, 2007, an off-duty employee of the Hinds County

Sheriff's Department, while wearing his official uniform and

driving his official Sheriff's Department vehicle, made a traffic

stop of Roy Bradley, Jr.  At the time, the officer was allegedly

engaged in providing private security services for an area
business.  Following the stop, the deputy, using his Hinds County
Sheriff's Department official equipment, radioed in and determined
that there was an outstanding warrant from the City of Jackson for
Bradley's arrest for unpaid parking tickets.  The deputy placed
Bradley under arrest, handcuffed him and placed him in the
deputy's official Sheriff's Department vehicle, and then radioed
the Jackson Police Department (JPD) to respond to the scene to
take custody of Bradley.  In response, JPD Officer L.V. Gator
arrived at the scene and took custody of Bradley, replacing the
deputy's handcuffs with the officer's JPD handcuffs.  After the
Hinds County deputy departed the scene, Officer Gator removed
Bradley from the backseat of the vehicle and removed one of the
handcuffs from Bradley, allegedly to get him to sign a form.
Officer Gator alleges that Bradley tried to grab his weapon and in
self-defense, Gator shot Bradley four times in the abdomen and
chest.  Bradley died as a result of these gunshot wounds.

     Plaintiff filed this wrongful death lawsuit in the Circuit
Court of Hinds County, Mississippi alleging violations of the
Fourth, Eighth and Fourteenth Amendments of the United States
Constitution pursuant to 42 U.S.C. §1983, as well as state law
claims of negligent and/or intentional infliction of emotional
distress and for loss of consortium against a number of
defendants, including the City of Jackson, JPD's chief of police,
JPD Officer Gator, Hinds County Sheriff Malcolm McMillin, in his

individual and official capacities, the Hinds County Deputy who
arrested Bradley (identified only as "John Doe"), and G&K Services
Co., alleged to be the private employer for which "John Doe" was
employed at the time he stopped and arrested Bradley.[1]  Sheriff
McMillin has filed the present motion for summary judgment as to
all plaintiff's claims against him.

As to plaintiff's § 1983 claim against him in his individual
capacity, Sheriff McMillin argues that he cannot be liable in his
individual capacity because he had no personal involvement in the
events leading to Bradley's death and cannot be held vicariously
liable, and because there is no basis for imposing supervisory
liability against him, and because in any event, he is entitled to
qualified immunity.

Plaintiff does not contend that Sheriff McMillin had any
direct personal involvement in the events leading to the shooting
death of her son.  However, she maintains that Sheriff McMillin is
nevertheless individually liable for her son's death because his
illegal policy of allowing deputies to use Sheriff's Department
equipment while engaged in off-duty private security work made it
possible for the officer to make the stop of her decedent which
set in motion the chain of events which led to his death.  In the

---

[1]    Plaintiff has alleged that the deputy was employed by
defendant G&K Services at the time of the incident.  However, G&K
has denied that it employed the deputy and claims that his
employer was instead Cain Lithographers, another business located
in the same shopping center.  Thus, G&K has recently moved to add
as a defendant Cain Lithographers as a necessary party.

court's opinion, plaintiff's claim fails on a number of bases, including that she has not shown that the challenged policy was unlawful or at least that Sheriff McMillin could not reasonably have concluded that it was permissible to allow the deputy's off-duty use of Sheriff's Department equipment; she has not established any basis for finding deliberate indifference by Sheriff McMillin; and, perhaps most conspicuously, she has not established that her son's death was proximately caused by Sheriff McMillin's allegedly unlawful policy.

Under well-settled legal principles, in order for a supervisory official to be found liable under § 1983, he must have been personally involved in conduct causing the alleged deprivation of constitutional rights, or there must be a causal connection between *his own actions* and the constitutional violation sought to be redressed. Robinson v. Louisiana, Civil Action No. 05-1016-C, 2008 WL 4693248, 2 (M.D. La. Sept. 23, 2008) (citing Lozano v. Smith, 718 F.2d 756, 768 (5th Cir. 1983)). Where a supervisory official had no direct personal participation in the alleged constitutional violation, "the plaintiff must allege that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies, or as a result of a breach by the supervisor of an affirmative duty specially imposed upon him by state law." Id. (citing Lozano). This principle

4

flows from the rule that "[a] supervisory official cannot be held

individually liable under

§ 1983 for the actions of subordinates on any theory of *vicarious*

*liability;* only the official's direct acts or omissions will give

rise to individual liability."  Alton v. Texas A & M Univ., 168

F.3d 196, 200 (5th Cir. 1999).  See Monell v. Dept. of Social

Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)

(holding that under § 1983, supervisory officials cannot be held

vicariously liable for the actions of their subordinates).

The circumstances in which a supervisory official may be held

liable under § 1983 even in the absence of participation in the

specific constitutional deprivation have been summarized as

follows:

> Without personal participation by an official,
> supervisory liability under Section 1983 can exist only
> where the official "implement[s] a policy so deficient
> that the policy 'itself is a repudiation of
> constitutional rights' and is 'the moving force of the
> constitutional violation.'" [Thompkins v. Belt, 828 F.2d
> 298, 304 (5th Cir. 1987)] 304 (citations omitted).  See
> also Clark v. McMillin, 932 F. Supp. 789, 790 (S.D.
> Miss. 1996) (in order to prevail on claim against
> sheriff in his individual capacity, plaintiff "must show
> that he affirmatively participated in acts that resulted
> in the alleged constitutional deprivation, or that he
> implemented unconstitutional policies that causally
> resulted in" injury).  Alternatively, a supervisory
> officer not personally involved in the alleged
> wrongdoing can be liable if he failed to train or
> supervise the officers involved, there is a causal
> connection between the alleged failure to supervise or
> train and the alleged violation of plaintiff's rights,
> and this failure to train or supervise constitutes
> deliberate indifference.  Thompson v. Upshur Cty., 245
> F.3d 447, 459 (5th Cir. 2001) (citations omitted).

Miley v. Jones County Jail, Civil Action No. 2:05cv2072-KS-MTP,

2007 WL 2159334, at 6 (S.D. Miss. July 25, 2007)).  See also

Brooks v. Stringer, Civil Action No. 2:04CV120KS-MTP, 2007 WL

1087487, at 12 (S.D. Miss. April 10, 2007) (recognizing that a

plaintiff may establish individual liability of sheriff by showing

that he "implemented an unconstitutional policy or lack of policy"

which caused the plaintiff's injuries).

     Plaintiff herein does not contend that Sheriff McMillin

implemented an unconstitutional policy, but rather charges that

his policy of allowing the use of Sheriff's Department equipment

by off-duty deputies violated state law, and that this violation

proximately led to her son's death.  The Fifth Circuit has held

that a state supervisor's breach of a state-law duty can give rise

to direct liability under § 1983 where the plaintiff shows that:

"(1) the [supervisor] failed to supervise or train the

[subordinate], (2) a causal connection existed between the failure

to supervise or train and the violation of the plaintiff's rights,

and (3) such failure to supervise or train amounted to gross

negligence or deliberate indifference."  Smith v. Brenoettsy, 158

F.3d 908, 911-12 (5th Cir. 1998) (citing Hinshaw v. Doffer, 785

F.2d 1260, 1263 (5th Cir. 1986)).  The Fifth Circuit explained the

rationale for this rule in Doe v. Rains County Independent School

District, 66 F.3d 1402, 1413 (5th Cir. 1995), stating:

     Where a supervisory official breached a state-law duty
     with deliberate indifference toward a resulting
     constitutional injury, he misused the state authority

6

conferred on him to supervise and control his
subordinates.  The supervisor's failure to act, coupled
with his deliberate indifference, was tantamount to a
conscious decision to allow the alleged constitutional
injury to occur or persist.  This conclusion obtains
because the state official was responsible for
preventing the constitutional injury; his failure to do
so rendered him directly liable for the deprivation that
his subordinate perpetrated.  Such a supervisory
official is liable under § 1983 not because he committed
a distinct constitutional violation by breaching his
duty to supervise, but because his failure to control
his subordinate rendered him responsible for the
resulting subordinate misconduct—essentially, he was a
legal participant.

66 F.3d at 1413.

In the case at bar, plaintiff argues that state law

prohibited the use of Sheriff's Department equipment, other than

the uniform and weapon, by off-duty officers, and that Sheriff

McMillin not only failed to train his deputies that such equipment

could not lawfully be used by them for off-duty employment but

went so far as to adopt a policy affirmatively allowing such off-

duty use.  She claims that his actions in this regard were

deliberately indifferent to the rights of persons with whom the

deputies would come in contact, and that his actions led directly

to the shooting death of Roy Bradley.

Mississippi Code Annotated § 17-25-1, on which plaintiff

relies, provides that certified law enforcement officers employed

by a county or municipality "may wear the official uniform and may

utilize the official firearm issued by the employing jurisdiction

while in the performance of private security services in off-duty

hours" if such use is approved by the governing authority of the

7

county or municipality.  In the case of a county, the sheriff must

also approve such use; and his must "be on an employee-by-employee

basis and not by general order."  As permitted by this statute,

Sheriff McMillin had in place General Order 92-02-03, which

defines, outlines and describes accepted forms of off-duty

employment, including "law enforcement related" off-duty

employment, and which provides (consistent with the statute) that

an officer must request and obtain prior approval from the

commander of operations before engaging in such employment.

> The General Order further provides
>
> Use of Sheriff's Office uniforms, equipment, and
> vehicles shall be permitted in conjunction with law
> enforcement related employment when ... such use
> provides safety for the Deputy and establishes a
> uniformed presence which is in the best interest of the
> community and the number of vehicles at any site does
> not exceed that which is necessary for safe and
> effective service.

Plaintiff does not deny that the statute authorizes the use of an

officer's official uniform and weapon for off-duty employment, but

she contends that authorization for use of a Sheriff's Department

vehicle and other equipment, including a radio and blue lights,

violates the statute.

In his motion, Sheriff McMillin notes that, by its terms,

§ 17-25-1 does not prohibit a county or its sheriff from

authorizing an off-duty deputy to use a sheriff's department

vehicle or other equipment while engaged in private security work.

The statute simply does not address the issue, and there is no

other statute or law which provides that the approved use of a

sheriff's department vehicle or other equipment by a deputy

engaged in private security work is illegal.  He submits,

therefore, that his policy of allowing the off-duty use of such

equipment (and of not training his officers that they may not use

such equipment) is not objectively unreasonable, entitling him to

qualified immunity.  See Mesa v. Prejean, 543 F.3d 264, 269 (5th

Cir. 2008) ("For immunity to apply, the 'actions of the officer

must be objectively reasonable under the circumstances, such that

a reasonably competent officer would not have known his actions

violated then-existing clearly established law.'") (citation

omitted).  He argues, moreover, that his policy to allow off-duty

use of the Sheriff's Department vehicle, radio and lights in

certain situations (and hence his failure to train that this was

not allowed) did not amount to either reckless disregard or

deliberate indifference.  Finally, he argues that there is no

reasonable basis for finding that his policy of allowing the use

of Sheriff's Department vehicles and other equipment was a

*proximate cause* of the allegedly intentional shooting by an

individual officer of another jurisdiction after the deputy who

made the initial arrest using his Sheriff's Department equipment

had already relinquished custody of the arrestee and departed the

scene.

In response to defendant's motion, plaintiff points out there

is no separate statutory authority which *allows* the sheriff of a

county to authorize the use of an official vehicle and/or other
equipment such as the official radio and/or lights used to make
traffic stops, and she suggests that by expressly authorizing the
off-duty use of certain official Sheriff's Department items, i.e.,
the uniform and weapon, § 17-25-11 by implication excludes the
off-duty use of all other Sheriff's Department items and
equipment.  She concludes that Sheriff McMillin should have known
that his policy violated state law and further should have
recognized "the dangers inherent with allowing unfettered use of
official vehicles and equipment by deputies performing off-duty
employment which is law enforcement related," and that his failure
to train his deputies "on the limits of authority to use the
official vehicle and attendant equipment in traffic stops that
result in a constitutional violation" is objectively unreasonable.

    Regardless of whether the statute at issue could be
reasonably interpreted to prohibit the off-duty use of any
official Sheriff's Department equipment other than that
specifically authorized, i.e., the uniform and weapon, the statute
does not clearly prohibit such off-duty use of other equipment and
thus it is by no means apparent that Sheriff's McMillin's policy
runs afoul of state law.  However, even if it did, the policy
allowing such use, and the consequent failure to train his
deputies to the contrary, does not amount to deliberate
indifference.  "Deliberate indifference is an extremely high
standard to meet."  Gobert v. Caldwell, 463 F.3d 339, 346 (5th

Cir. 2006).  "An official must know of and disregard an excessive risk [of a constitutional violation]; the official must both be aware of facts from which the inference could be drawn that a substantial risk . . . exists, and he must also draw the inference."  Corley v. Prator, No. 07-31002, 2008 WL 3911070, 3 (5th Cir. Aug. 25, 2008) (citing Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994)); see also Smith v. Brenoettsy, 158 F.3d at 912 (showing of deliberate indifference requires proof that official was "both aware of facts from which the inference could be drawn that a substantial risk of serious harm [i.e., an actionable constitutional violation] exist[ed], and he also [drew] the inference").  Plaintiff has failed to suggest any basis for concluding that Sheriff McMillin acted with deliberate indifference to a potential constitutional violation solely by allowing a trained and certified law enforcement officer to use a Sheriff's Department vehicle, radio and lights when performing off-duty private security services, particularly where the policy authorizes such use only when it "provides safety for the Deputy and establishes a uniformed presence which is in the best interest of the community and the number of vehicles at any site does not exceed that which is necessary for safe and effective service."

Notably, plaintiff has not alleged that the sheriff's deputy violated her decedent's constitutional rights when he stopped him for a traffic offense; she does not deny that there was an

outstanding warrant for her son's arrest or contend that the

arrest itself was unlawful; she does not charge that the arresting

officer used excessive force in making the arrest; and she does

not contend that the officer violated her son's constitutional

rights by turning him over to the custody of an officer of the

Jackson Police Department.  She complains only that the officer

would not have been able to make the stop in the first place

because he was in a Sheriff's Department vehicle with Sheriff's

Department blue lights, and that he was only able to discover the

warrant by using his Sheriff's Department-issued radio.  However,

the use of the equipment was not itself a constitutional

violation, and did not cause a constitutional violation by the

deputy who used the equipment.  Nor did the use of the equipment

proximately cause the constitutional deprivation of which

plaintiff complains, namely, JPD Officer Gator's shooting of her

son.

     To establish proximate cause under § 1983, plaintiff must

establish both cause in fact and foreseeability.  See Morin v.

Moore, 309 F.3d 316, 326 (5th Cir. 2002).  Ordinarily, a third-

party's intervening criminal conduct negates foreseeability,

except that when the third party's criminal conduct is a

foreseeable result of a defendant's prior negligence, the criminal

act will not excuse the previous tortfeasor's liability.  Id. at

327 n.4.  See also Glover ex rel. Glover v. Jackson State Univ.,

968 So. 2d 1267, 1289 (Miss. 2007) ("As a general rule of thumb,

criminal acts can be intervening causes which break the causal

connection with the defendant's negligent act, *if the criminal act*

*is not within the realm of reasonable foreseeability*.") (quoting

O'Cain v. Harvey Freeman & Sons, Inc., 603 So. 2d 824, 830 (Miss.

1991)). There is nothing whatsoever to suggest that the arresting

officer here should have foreseen that another officer would shoot

and kill Roy Bradley.

     For all these reasons, the court concludes that Sheriff

McMillin is entitled to summary judgment as to plaintiff's claims

against him in his individual capacity.  And while Sheriff

McMillin has not clearly sought summary judgment for plaintiff's

official capacity claims against him,[2] it is clear from the record

that she cannot establish an official capacity claim against him,

for there is no evidence of an unconstitutional policy, or

deliberate indifference or proximate cause.  Accordingly, any

official capacity claim against him will be dismissed, as well.

     Sheriff McMillin has moved for summary judgment as to

plaintiff's state law claims on a variety of grounds, including

(1) that the claims are subject to and barred by specific

provisions of the Mississippi Tort Claims Act, Miss. Code Ann.

---

     [2]     There may have been some confusion as to whether
plaintiff had asserted a claim against Sheriff McMillin in his
official capacity.  Plaintiff originally sued the Hinds County
Sheriff's Department and Board of Supervisors, in addition to
Sheriff McMillin, and thus may have considered an official
capacity claim against him superfluous.  Following the court's sua
sponte dismissal of these defendants, although plaintiff did not
seek to amend to add an official capacity claim against Sheriff
McMillin, it has been clear from the outset that she intended to
hold the County liable for her son's death.

§ 11-46-1 *et seq.*, namely, the exemptions from waiver for police
protection, see § 11-46-9(1)(c), for the performance of
discretionary functions, see § 11-46-9(d), and for performance of
or failure to perform a statute, see § 11-46-9(b); and (2) because
plaintiff's allegations and proof do not support her claims, which
are for negligent and intentional infliction of emotional
distress.  In response to Sheriff McMillin's motion, which appears
meritorious on its face, plaintiff declares that Sheriff McMillin
is not entitled to any exemption under the MTCA because he
exceeded his statutory authority by establishing a policy
authorizing use of official vehicles and attendant equipment and
then failed to establish a policy for training and supervision
regarding the limits of use of such equipment by off-duty deputies
in private employment.  In the court's opinion, not only is it
manifest that Sheriff McMillin is protected from liability by the
police protection exception under § 11-46-9(1)(c), which requires
proof that he "acted in reckless disregard of the safety and well-
being of any person not engaged in criminal activity at the time
of injury," but also, even if he were not exempt, plaintiff's
allegations and proof do not support her claims in any event.  See
Robinson v. Hill City Oil Co., Inc., 2008 WL 2894668 (Miss. Ct.
App. 2008) ("To prevail on a claim of intentional infliction of
emotional distress, a plaintiff must prove that the defendant's
conduct was reckless, intentional, and so outrageous to such an
extreme degree that it exceeds the bounds of decency and, thus, is
not tolerated by a civilized community."); Waters v. Allegue, 980

So. 2d 314, 318 (Miss. Ct. App. 2008) ("A plaintiff may not recover for a claim of negligent infliction of emotional distress without showing that he or she suffered a physical injury.").

Based on the foregoing, it is ordered that Sheriff McMillin's motion for summary judgment is granted.

SO ORDERED this 24th day of November, 2008.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE